IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRYAN R. GIPSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 05-0601-WS-C |
| | ) | |
| MARK A. MATTOX, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on defendant's Motion for Reconsideration or, in the Alternative, for Certification for Appeal (doc. 58). The Motion has been briefed and is ripe for disposition at this time.

**I.      Background.**

Plaintiffs Bryan R. Gipson and Chem Technologies of Mississippi, Inc. ("ChemTech") brought this patent action against defendant Mark A. Mattox pursuant to 35 U.S.C. § 256 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* Plaintiffs maintain that U.S. Patent No. 6,866,048 (the "'048 Patent") is invalid and that it was wrongly issued to Mattox because Gipson is the true inventor of the subject invention. On that basis, plaintiffs seek certain declaratory relief relating to the validity (or lack thereof) of the '048 Patent. Plaintiffs also ask this Court to direct the U.S. Patent and Trademark Office to substitute Gipson's name for Mattox as the inventor of the '048 Patent, pursuant to 35 U.S.C. § 256.

The '048 Patent concerns an invention relating to a method of treating dry gas and oil pipelines to remove iron sulfide deposits. While this invention includes 12 claims, the principal battleground in this litigation, as framed by the parties in their summary judgment submissions, concerns inventorship of the formula for the chemical compound used in the iron sulfide removal process.

At the close of discovery, Mattox moved for entry of summary judgment. As grounds for this

request, Mattox argued as follows: (1) Gipson did not prove that he invented the invention because he had difficulty remembering the chemical formula during his deposition, and because he conceded that nonparty Kansas Hernandez first suggested the idea of adding ammonium salts to that formula; (2) plaintiffs did not show clear and convincing evidence to overcome the legal presumption that Mattox was the true inventor; and (3) ChemTech lacked standing to proceed as a party plaintiff because Gipson had never validly assigned his rights in the invention to that entity.  (*See* doc. 43.)

On November 27, 2006, the undersigned entered an Order (doc. 54) denying Mattox's Rule 56 Motion.  Viewing the evidence in the light most favorable to plaintiffs and with due regard for the corroboration requirement of the law of inventorship, the Court concluded that Gipson's conception of the invention was complete before his association with Mattox.  The Court rejected Mattox's argument that Gipson's sole inventorship was negated by Hernandez's suggestion that ammonium salts be added to the invention, inasmuch as plaintiffs' evidence was that conception was complete before Gipson ever met with Hernandez.  The Court also found that Gipson's uncertainty as to the chemical formula of the invention at a deposition taken six years after the fact might be grounds for impugning his credibility at trial, but did not prevent plaintiffs from showing clear and convincing evidence of sole inventorship.  Finally, with respect to standing, the Court determined that Gipson and ChemTech had endeavored to assign Gipson's rights in the invention to ChemTech prior to the filing of this lawsuit; however, a technical error in the written agreement prevented that assignment from being effective as to the invention.  The Court therefore authorized the parties to submit a corrected assignment, which they promptly did, to confirm ChemTech's standing.

On December 14, 2006, additional counsel appeared for Mattox for the first time.  Contemporaneously, Mattox filed a Motion for Reconsideration, ascribing the following errors to the November 27 Order: (a) legal error as to inventorship, inasmuch as Gipson could not possibly be sole inventor of the '048 Patent because he did not conceive the ammonium salt feature of that invention; (b) legal error in crediting an affidavit from Gipson that contradicted his prior sworn testimony; and (c) legal error in permitting plaintiffs to correct the flaws in the assignment of Gipson's rights to ChemTech so as to confer standing on ChemTech.  In the event that the Court does not vacate the summary judgment

-2-

order on these grounds, Mattox requests that these questions be certified for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(b).

## II.     Legal Standard for Reconsideration.

Largely overlooked by Mattox's filing is the important threshold consideration of whether reconsideration is appropriate on any of these grounds.  After all, in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly.  *See United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").  That said, reconsideration is proper to correct manifest errors of law or fact.  *See* Rule 60(b), Fed.R.Civ.P.; *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp.2d 1350, 1355 (M.D. Ala. 2003) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").

It is well established that "[a]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." *Rossi v. Troy State University*, 330 F. Supp.2d 1240, 1249 (M.D. Ala. 2002) (denying motion to reconsider where plaintiff failed to submit evidence in question prior to entry of order and failed to show good cause for that omission).  Furthermore, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997).[1]  Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing

---

[1]     *See also American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against utilization of motion to reconsider to afford a litigant "two bites at the apple"); *Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced

arguments considered and rejected in the underlying order.  *See Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 n.1 (S.D. Ala. 2005) ("motions to reconsider are not a platform to relitigate arguments previously considered and rejected"); *Lazo v. Washington Mutual Bank*, 2001 WL 577029, *1 (9th Cir. May 29, 2001) (similar); *American Marietta Corp. v. Essroc Cement Corp.*, 2003 WL 463493, *3 (6th Cir. Feb. 19, 2003) (similar).[2]

Although these fundamental notions are largely ignored in his filings, each aspect of Mattox's Motion will be carefully scrutinized for conformity with these principles.

**III.   Analysis.**

   A.    *Sole Inventorship Issue.*

The centerpiece of Mattox's Motion is his contention that this Court erred in finding genuine issues of fact as to whether Gipson invented the formula at issue in the '048 Patent.  The evidence in the light most favorable to plaintiffs is that, after Gipson discovered that a blend of 95% water and 5% THPS was remarkably effective at removing iron sulfide deposits from pipelines and decided to move forward in marketing that chemical compound, Gipson and Mattox met with Hernandez (a representative of Rhodia, the company that manufactured a biocide product which Gipson had diluted in making his discovery) to request Rhodia's permission to use its product in diluted form for iron sulfide applications.  Plaintiffs' evidence is that Hernandez authorized such use and said, "well, you may want to add a little ammonium chloride to it to help it react quicker."  (Gipson Dep., at 72.)  In particular, Hernandez "suggested that they consider including in the solution ammonium salts in the ratio

_____

several new arguments); *Coppage v. U.S. Postal Service*, 129 F. Supp.2d 1378, 1379-81 (M.D. Ga. 2001) (similar); *Renfro v. City of Emporia, Kan.*, 732 F. Supp. 1116, 1117 (D. Kan. 1990) ("A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend.") (citation omitted).

   [2]    The pragmatic policy considerations underlying these principles are that "if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, [a district] court could not efficiently or satisfactorily perform its duties."  *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985).  Imagine how a district court's workload would multiply if it was obliged to rule twice on every hotly contested issue joined in a case pending before it, all because the losing party thought of new arguments it could and should have raised earlier or wanted a second crack at the same arguments it had raised previously.

-4-

of 1% THPS to .1% ammonium salt," a mere "arithmetic function" that had previously appeared in published literature and was well known in the industry.  (Hernandez Aff., ¶¶ 7, 10.)[3]  This suggestion spurred Gipson to conduct "bottle testing," through which he determined that ammonium salts did in fact improve the compound's functionality in removing iron sulfide deposits.  (Gipson Dep., at 72.)  Such testing was "backyard testing" to see if ammonium chloride would cause the product to react differently, as Gipson "played with it as far as those different blends."  (*Id.* at 75-76, 78.)  Based on that testing, Gipson and Mattox went to market with a product consisting of 5% THPS and 0.5% ammonium chloride, mixed in water.

        The crux of the Motion to Reconsider is Mattox's assertion that Gipson cannot possibly be the sole inventor of the formula because it was Hernandez, and not Gipson, who suggested the inclusion of ammonium salts.  As an initial matter, this issue was specifically raised in the parties' summary judgment briefs and considered by the Court in its November 27, 2006.  Every argument Mattox now presents on this point is one that he either made unsuccessfully in his summary judgment filings or could have made (but failed to make) in his such filings.  This kind of redundant, second-bite-at-the-apple motions practice constitutes an improper use of the vehicle of a motion to reconsider, which should be invoked only in extraordinary circumstances, and impinges on the interests of judicial economy and efficiency.  *See American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985); *Gougler*, 370 F. Supp.2d at 1189 n.1.  Accordingly, reconsideration on this basis is unwarranted.

        Presumably, Mattox's stance is that reconsideration of this point is necessary to correct clear errors of law or manifest injustice in the November 27 Order.  But his arguments on the merits are unpersuasive.  In a nutshell, Mattox begins with the black-letter propositions that an inventor is one who conceives the invention, and that conception includes every feature of the claimed invention.  Because the 0.5% ammonium chloride ingredient is a feature of the '048 Patent, and because Gipson admits that Hernandez suggested that feature's inclusion in the invention, Mattox concludes, Gipson could not

---

[3]        In his own briefs, Mattox insisted that this ratio "was well known in the industry, and certainly was not an invention of Bryan Gipson nor Kansas Hernandez."  (Mattox Brief (doc. 43), at 8.)

possibly be the sole inventor.

The law is clear that "[a]n idea is sufficiently definite and permanent for conception ... when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005) (citation omitted).  Under plaintiffs' evidence, which must be accepted at the Rule 56 stage, conception was complete before Gipson ever met with Hernandez and started talking about ammonium chloride.  Prior to that meeting, Gipson had a specific, settled idea of using a 5% blend of THPS in water to remove iron sulfide deposits from dry gas and oil pipelines, and had devoted extensive research to establishing that formulation.  Gipson did not meet with Hernandez seeking ideas or guidance for how to improve his invention; rather, he already had invented it and was ready to proceed to market with it in its present form.  All Hernandez did was merely explain the then-current state of the art as to ammonium chloride to Gipson, after which Gipson used that information to perfect his already-conceived invention.  For that reason, the undersigned remains of the view (already explained in detail in the November 27 Order) that plaintiffs' evidence reflects that Hernandez's suggestion was nothing more than a post-conception idea for reducing Gipson's previously-conceived invention to practice.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) (inventor "may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent").[4]

Mattox's rejoinder is interesting, but ultimately unavailing.  Specifically, defendant insists that any invention that omitted 0.5% ammonium chloride is not the '048 Patent invention, because that patent is peppered with references to 0.5% ammonium chloride in every claim.  Under this line of

---

[4]      Mattox argues that the Court "erroneously interprets" and "misapprehends the meaning" of *Ethicon* on this point, and suggests the Court has confused the concepts of conception and reduction to practice.  (Defendant's Brief (doc. 59), at 5-6.)  On its face, the November 27 Order exhibits no such confusion, but instead expressly observes in several places that under plaintiffs' evidence, Gipson's conception of the invention was complete before he ever met with Hernandez, and that Hernandez's suggestion simply related to reduction to practice, such that the quoted passage of *Ethicon* was applicable.  (November 27 Order, at 9, 12.)  Thus, Mattox's argument is predicated on an inaccurate portrayal of the November 27 Order.

thinking, then, Gipson's 5% THPS invention is a different invention than that encapsulated in the '048 Patent because Gipson's invention did not include the 0.5% ammonium chloride. Because 0.5% ammonium chloride is a "feature" of the '048 Patent and because plaintiffs' evidence is that Hernandez came up with the idea to use that substance in that concentration, based on well-known industry facts, Mattox argues that Gipson can't possibly be the sole inventor of the '048 Patent because he did not invent that feature.

Hernandez is not a party and does not claim to be a joint inventor, a prudent move on his part because patent law would not allow him to achieve that status. Irrespective of what may or may not be designated a "feature" of the final patent, not just any suggestion to an inventor renders the suggesting person a joint inventor. Rather, the law clearly provides that "to be a joint inventor, an individual must make a contribution to the conception of the claimed invention *that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.*" *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (emphasis added). Plaintiffs' evidence, considering both the deposition testimony of Gipson and the affidavit statements of Hernandez, is that the 0.5% ammonium chloride tweak to the formula, "feature" or no, is but a trifling component of the invention. In this view, Hernandez's suggestion merely gilded the lily, and the real invention lies in the 5% THPS solution already conceived by Gipson.[5] Indeed, "[c]ontributions to realizing an invention may not amount to a contribution to conception if they merely explain what was then state of the art." *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004). "A contribution of information in the prior art ... is not a contribution to conception." *Id.* at 1362; *see also Fina Oil*, 123 F.3d at 1473 ("a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art"). According to plaintiffs' evidence, Hernandez's "contribution" amounted to nothing more than explaining to Gipson

---

[5]      For example, Hernandez stated that Gipson was the first person to discover the 5% solution for iron sulfide applications, and that discovery is "very significant and the key discovery to this new use for THPS." (Hernandez Aff., ¶ 6.) Meanwhile, according to Hernandez, the 0.5% ammonium salts addition "is merely an arithmetic function" and there was no real discovery at all in including this well-known arithmetic function to perfect Gipson's invention. (*Id.*, ¶ 10.)

a well-known concept relating to the current state of the art. Under the clear weight of these Federal

Circuit authorities, such an insignificant contribution, when measured against the dimension of the full

invention, is not a contribution to conception and could not qualify Hernandez for joint inventorship

status. If Hernandez cannot get credit for conceiving any feature of the invention, then his involvement

would not in any way detract from Gipson's inventorship status.[6] As such, Mattox's contention that

Hernandez's mere statement about the arithmetic function of using ammonium chloride automatically

and necessarily strips Gipson of sole inventorship status because the ammonium chloride ratio is a

"feature" of the '048 Patent is inconsistent with the law of the Federal Circuit and cannot prevail.[7]

Finally, Mattox's reliance on the Hernandez evidence to overcome Gipson's claims of sole

inventorship is misplaced because this argument proves too much. If, as Mattox so vociferously argues,

Hernandez's ammonium chloride suggestion constituted conception of that feature of the '048 Patent,

then plaintiffs' evidence on that point would demonstrate that said '048 Patent is invalid because

Mattox (the listed inventor) plainly did not invent that feature.[8] Recall that the relief sought by the

---

[6]      As the Federal Circuit has explained, "[t]he line between actual contributions to conception and the remaining, more prosaic contributions to the inventive process that do not render the contributor a co-inventor is sometimes a difficult one to draw." *Eli Lilly*, 376 F.3d at 1359. Defendant would blur this line beyond all recognition in order to vault Hernandez to joint inventor status and to strip Gipson of sole inventorship. When the evidence is reviewed in the light most favorable to plaintiffs, however, it is quite clear that Hernandez's involvement is a mere "prosaic contribution[] to the inventive process." That Mattox may have elected to recite Hernandez's prosaic contribution in the '048 Patent as a "feature" of the invention does not in any way alter Hernandez's status vis a vis this invention.

[7]      Defendant roundly condemns the joint inventorship issue as irrelevant to his contention that Gipson is not the sole inventor. However, these issues are far more closely intertwined than Mattox will admit. The above analysis shows that, under plaintiffs' evidence, Hernandez is not a joint inventor because he did not contribute to conception. If Hernandez did not make a contribution to conception, then nothing in the facts of his involvement would prevent Gipson from proving that he conceived the invention himself.

[8]      According to Mattox, "if a putative inventor admits that he did not conceive of every element in the claimed invention, he is ***not*** the sole inventor." (Reply (doc. 68), at 2.) No published, precedential authority is cited for this point. Nonetheless, accepting that proposition as correct, if Mattox is right that Hernandez's conception of the ammonium salts feature of the invention stripped

Complaint is not confined to substituting Gipson for Mattox on the '048 Patent; rather, Gipson has expressly requested "a declaratory judgment that the '048 Patent was improperly obtained by the Defendant Mattox due to fact that Defendant Mattox was not the inventor," and likewise seeks a declaratory judgment invalidating any assignment of the '048 Patent by Mattox or any contract or other binding contract entered into by Mattox concerning same.  (Complaint, at 3-4.)  If all of defendant's arguments as to Hernandez's purported conception were accepted at face value, then summary judgment would still be inappropriate because defendant's own arguments establish plaintiffs' entitlement to proceed to trial on their declaratory judgment claims relating to the patent's validity.[9]

       B.     *Alleged Inconsistencies in Gipson's Testimony.*

       Next, Mattox requests reconsideration of the November 27 Order on the grounds that the affidavit submitted by Gipson was inconsistent with his deposition testimony on the question of when and with whom he shared information concerning his invention.  In his affidavit, Gipson averred that he discussed the invention with Mattox and Hernandez before he commenced working for Mattox's company in April 2000.  In a prior deposition, however, Gipson testified that he never shared those findings with anyone until after he began working for Mattox's company.  The affidavit sought to explain the inconsistency by stating that he was "confused with the questioning" in his deposition.  (Gipson Aff., ¶ 5.)

_____

Gipson of sole inventor status, then surely it also deprived Mattox of sole inventor status.  Thus, by defendant's own argument, plaintiffs' evidence (if believed at trial) proves the '048 Patent to be invalid, and would entitle plaintiffs to their requested declaratory judgment on the patent's validity.  Of course, this point is magnified by plaintiffs' substantial evidence that Gipson conceived other features of the invention, which would again tend to undermine the validity of the '048 Patent and would bolster plaintiffs' claims for a declaratory judgment that the '048 Patent is invalid.

[9]     The declaratory judgment dimension of plaintiff's claims is clearly delineated in the Complaint.  Moreover, the Federal Circuit has recognized patent invalidity declaratory judgment actions.  *See, e.g., Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984).  Yet defendant's Rule 56 filings utterly ignore those declaratory judgment claims, focusing exclusively on whether Gipson is a sole inventor for purposes of plaintiffs' claim under 35 U.S.C. § 256.  As explained herein, those declaratory judgment claims matter to the summary judgment analysis, particularly given defendant's failure to articulate any reason why summary judgment in his favor might be warranted on those claims.

This discrepancy was obvious upon even a casual review of the summary judgment record. Indeed, the November 27 Order specifically mentioned it. (Doc. 54, at 4 n.7.) The Court explained its resolution of that issue in the following terms: "[D]efendant has not invoked the sham affidavit rule, nor has he otherwise sought to have Gipson's affidavit stricken, and Gipson has offered an explanation for the discrepancy. The undersigned will not unilaterally strike down this affidavit as improper." (*Id.*) Now, for the first time, Mattox steps forward to articulate this very evidentiary objection to the affidavit. He proffers no explanation for his failure to raise the issue earlier. He identifies no grounds for concluding that the undersigned's refusal to raise his objections for him amounts to clear error or manifest injustice. Instead, he simply asks the Court to cast aside its November 27 Order based on an evidentiary objection that defendant could and should have articulated during the initial briefing, but which he failed to raise. To allow reconsideration on this basis would be to compromise fundamental principles of finality of rulings, would be manifestly inefficient, would squander judicial resources, and would send a message to other litigants that they need not bother raising all of their objections and arguments in briefing summary judgment, because the losing party can successfully inject those arguments later via a motion to reconsider. The Court declines to send such a counterproductive and unhelpful message. For all of these reasons, Mattox's inconsistent-affidavit objection is not a proper basis for reconsideration, and will not be examined at this time. *See Mays*, 122 F.3d at 46; *Rossi*, 330 F. Supp.2d at 1249; *Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004).[10]

> C.      *Standing of Chem Tech.*

As a final ground for reconsideration, defendant ascribes error to this Court's decision to allow ChemTech to cure the technical defect in the assignment executed by Gipson and ChemTech prior to

---

[10]      In arguing to the contrary, defendant incorrectly asserts that *Russell* "has absolutely nothing to do with raising new legal issues." (Reply Brief (doc. 68), at 6.) Defendant ignores the portion of *Russell* addressing a motion to reconsider, in which the court noted that the movant "makes several arguments that it has never before made to this court in support of its motion to remand. ... Now, however, Russell advances several new arguments. But a motion to reconsider should not be used by the parties to set forth new theories of law." 333 F. Supp.2d at 1234 (citation omitted). Far from having "nothing to do with raising new legal issues," in fact *Russell* has everything to do with it.

the filing of this lawsuit by completing a new, corrected assignment.  Mattox maintains that the error in

the original assignment requires that ChemTech's claims be dismissed for lack of standing.

To be sure, the Federal Circuit has opined that "nunc pro tunc assignments are not sufficient to

confer retroactive standing."  *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.

Cir. 1998).  A close look at *Enzo*'s reasoning, however, demonstrates that this general rule should not

apply here.  In particular, the *Enzo* court's disapproval of nunc pro tunc assignments was predicated on

the rationale that to allow such assignments to cure standing defects

> "would unjustifiably expand the number of people who are authorized to sue.  Parties
> could justify the premature initiation of an action by averring the court that their standing
> through assignment is imminent.  Permitting non-owners and licensees the right to sue,
> so long as they eventually obtain the rights they seek to have redressed, would enmesh
> the judiciary in abstract disputes, risk multiple litigation, and provide incentives for
> parties to obtain assignment in order to expand their arsenal and the scope of litigation.
> Inevitably, delay and expense would be the order of the day."

*Enzo*, 134 F.3d at 1093-94 (citation omitted).  The *Enzo* court stopped short of universal

condemnation of the use of nunc pro tunc assignments to cure standing defects, implying that a different

outcome may be appropriate where a party provides "reason to stray from this sound reasoning to

confer standing."  *Id.* at 1094.

The circumstances present here are markedly different than the parade of horribles that

motivated the *Enzo* ruling.  Unlike in *Enzo*, here the Complaint always included both Gipson and

ChemTech as plaintiffs.[11]  Whatever rights ChemTech did or did not have, Gipson (as the alleged true

inventor of the invention covered by the '048 Patent) unquestionably had standing to sue Mattox at that

time.  This is not a case in which suit was filed prematurely by plaintiffs who lacked standing.

Moreover, the record is devoid of any inference of nefarious plotting, manipulative and opportunistic

strategy, or other attempts to "game the system" by Gipson and ChemTech.  They had in fact executed

---

[11]     *Compare Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1210 (Fed. Cir.
1998) (pointing out that in *Enzo*, only plaintiff at time suit was filed was mere licensee, with patentee not
originally joined); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp.2d 210, 214 (S.D.N.Y.
2005) (noting that in *Enzo*, only the licensee was a plantiff, and the patentee/licensor had not been
joined).

an assignment three weeks before the Complaint was filed.  The clear evidence before the Court is that Gipson and ChemTech had always intended this assignment to encompass all of Gipson's rights in the '048 Patent.  (Stephens Aff., ¶ 4; Gipson Aff., ¶ 4.)  However, an apparent drafting error in that assignment had rendered it ineffective to convey Gipson's rights in the '048 Patent.[12]  Gipson and ChemTech were not dragging their feet, hiding the ball, or attempting to enmesh the Court in an imaginary dispute.  Rather, they simply failed to get the proper language in their assignment document.  Under these facts, none of the *Enzo* concerns are in play.  There was no premature initiation of litigation.  The judiciary was not enmeshed in an abstract dispute.  There was no risk of multiple litigation (except as described below, if Mattox's motion is granted).  No adverse incentives were created.  And there was no undue risk of expense or delay (except, again, if Mattox's urged course of action is followed).  Simply put, the facts and posture of this case are so drastically different from *Enzo* that the *Enzo* rule should not and does not apply.

Taking the analysis one level deeper, the only way that the assignment situation in this case would cause "delay and expense [to] be the order of the day," as *Enzo* feared, would be if Mattox's Motion were granted.  Let us trace out this scenario.  If the Court deemed the supplemental assignment inadequate to correct the standing defect, then ChemTech's claims would have to be dismissed for want of standing.  The interests of justice and equity would demand that any such dismissal be without prejudice.  *See H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378 (Fed. Cir. 2002)

---

[12]      In particular, the assignment dated September 30, 2005 provides that Gipson assigns all of his rights, title and interest "in Gipson's invention relating to a method and composition to decrease iron sulfide deposits in pipelines and other conduits (the 'Invention') which is currently being marketed by ChemTech under the trademark 'FESFLO' ...."  (Defendant's Exh. B (doc. 43).)  As written, the assignment excludes the '048 Patent because it is undisputed that FESFLO is something different than the '048 Patent.  Both Gipson and ChemTech have explained that they assumed the iron-sulfide reducing "Invention" referenced in the assignment to include, but not be limited to, FESFLO.  (Stephens Aff., ¶ 4; Gipson Aff., ¶ 4.)  That assumption was erroneous and rendered the assignment defective as to the '048 Patent; however, all indications are that it was an honest, good-faith mistake; after all, the '048 Patent constitutes an iron-sulfide removing invention, as was the "Invention" referenced in the assignment.  Despite a full opportunity to take discovery on this point, Mattox does not suggest that this omission from the assignment was anything other than a good-faith mistake.

-12-

(dismissal of patent case for lack of standing may be with or without prejudice, in the district court's discretion).  Given the near-certainty that ChemTech would wish to refile its litigation and given that the assignment has now been corrected to encompass Gipson's rights in the '048 Patent, equitable and prudential considerations would demand that the instant action be stayed until such time as ChemTech could file and serve a new lawsuit and that action could be consolidated with the instant case.  This action, which is presently set for trial in February 2007, would lie dormant for perhaps six months pending the refiling, service, answer and consolidation processes.  The resulting delay and expenditure of litigant and judicial resources would be both needless and wasteful, achieving no purpose other than to harass ChemTech as Mattox seizes on a technical glitch in the assignment papers to bring about pointless delay on the eve of trial.  This Court cannot and will not read *Enzo* to endorse such an impractical, unwieldy and hollow result, particularly where the concerns animating the *Enzo* rule are nonexistent here.

In short, then, this is a case in which the reasons to stray from the sound reasoning articulated by the Federal Circuit in *Enzo* are obvious and overwhelming.  It would make no sense to punish the plaintiffs for poor draftsmanship in an assignment by forcing ChemTech to endure the hassle and expense of filing a new lawsuit and moving to consolidate it with this case, all the while forcing Gipson and Mattox to remain in a holding pattern for a case that is quite literally ready to proceed to trial now.  Mattox's Motion is therefore **denied** insofar as it seeks reconsideration of the undersigned's ruling authorizing plaintiffs to submit a corrected assignment reflecting and confirming Gipson's assignment to ChemTech of all his rights and interests in the '048 Patent.

       D.        *Certification for Interlocutory Appeal.*

In the event that the undersigned does not agree that reconsideration is warranted here, Mattox asks that the issues identified in its Motion to Reconsider be certified for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(b).

When a district judge entering an interlocutory ruling "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).  The Eleventh Circuit has couched § 1292(b) interlocutory review as a "rare exception" to the general premise that the great bulk of appellate review must be conducted after final judgment.  *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004).  "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy."  *Id.* at 1259.

One of the statutory prerequisites for invoking that "rare exception" to the prohibition on interlocutory appeals is that immediate appeal must "materially advance the ultimate termination of the litigation."  § 1292(b).  The Eleventh Circuit has explained that this requirement means precisely what it says, to-wit: that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin*, 381 F.3d at 1259.  This element for § 1292(b) certification is not present here.  This case is ready for trial now, and an appeal (regardless of its outcome) would delay, not obviate the need for, a trial.  Even if defendant is correct that Hernandez's involvement strips Gipson of sole inventor status, defendant has been utterly silent as to the claims for declaratory relief concerning the validity of the '048 Patent.  (Indeed, as noted above, defendant's position concerning Hernandez would appear to play into plaintiffs' contention that the '048 Patent is invalid.)  Although these questions have not been briefed on summary judgment or otherwise presented to the Court (and it is far too late in the day for Mattox to initiate Rule 56 briefing on them now), those declaratory judgment claims apparently have vitality irrespective of whether Gipson is properly substituted for Mattox as the one true inventor of the '048 Patent.  Stated differently, Mattox has couched his legal objection to the November 27 Order as relating solely to the § 256 claim, and has not shown how it would have any preclusive or dispositive effect on the remaining declaratory judgment claims set forth in the Complaint.  The Court will not make defendant's arguments for it.  As it appears that a trial will be necessary on the declaratory judgment claims irrespective of the outcome of Mattox's appeal of the sole inventorship question, allowing an interlocutory appeal here would do nothing more than delay the trial and invite piecemeal appeals.  Moreover, interlocutory appeal of the ChemTech standing issue is plainly unwarranted because the trial will have to proceed as to plaintiff Gipson irrespective of whether ChemTech has standing or not.

-14-

On these grounds, the Court finds that this is not one of those exceptional cases in which the extraordinary remedy of an interlocutory appeal is appropriate or warranted.  For that reason, the Court  declines to make the certification contemplated by 28 U.S.C. § 1292(b).

**IV.      Conclusion.**

For all of the foregoing reasons, defendant's Motion for Reconsideration or, In the Alternative, for Certification for Appeal (doc. 58) is **denied**.  This action remains set for a Final Pretrial Conference on **January 16, 2007** at **10:30 a.m.**, with a bench trial to follow during the **February 2007** civil term.

DONE and ORDERED this 12th day of January, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE